Thank you, Your Honor. I'm Robert Riggs, counsel for Mr. Vernon Dunbar, the appellant here. This is also a Sixth Amendment case, and we've also submitted a Rule 28J letter. I want to make sure that that's found its way to the court. Was it mailed in earlier? It was. I'm sure it was. Right. This is not something you brought in today? No, this was earlier, regarding Crawford v. Washington. And this is a case where, although appellant's trial counsel had many deficiencies, which Art talked about, prior to trial the appellant made a timely motion for disclosure of a confidential informant. This confidential informant was the basis of a warrant that had been issued for his personal search, as well as the search of an apartment in Oakland on Apricot Street. And at that time, the government asserted what I'll call Roviero privilege, saying we choose not to disclose who this informant is, we're not going to put on any evidence about the informant, and we're going to rely solely on what was found at the apartment during the search. And what happened at trial that raises a problem here is that the prosecution, as part of its strategy of trying the case, and I think this becomes apparent from looking at how the case went from beginning to end, part of the strategy of trying the case was we need to explain that there is more to this case than just what was found at the apartment. What was found at the apartment, I think, makes a very clear and convincing case that someone was selling drugs out of the apartment based on the firearms and the drugs that were found there. So the real issue was, was this something that Mr. Dunbar was doing from the apartment, given that he wasn't the primary occupant, certainly, of the apartment? And so the officer was called to say, well, we had a warrant. And that testimony was immediately picked up on by the jury. Let me see if I understand the sequence correctly. There's a warrant that's based on a confidential informant. You've moved pretrial for disclosure. The government cites Roviero, and the district court basically sustains the government position and says I'm going to allow the nondisclosure of the confidential informant, but there will be no mention of now fill in the blank for me. No mention of anything from the informant. And the government agreed to that. That was a clear agreement. How? On the record. My understanding is what the court said was you can't mention any of the transactions between the C.I. and the defendant, right? That's true. That's exactly what the court said. Tell me how they violated that, the government. All right. Well, we have testimony about a warrant first, which I was just explaining. And so we need to consider what goes into that. I suppose that the ---- Well, the first thing you argue is the mere mention of the warrant necessarily violates the court order? I'm not sure if that's true. And I think in looking at what happened at this trial, there's several ways the problem can and should have been approached. For instance, possibly it could have been mentioned. We had a warrant to search the apartment. I think that would be neutral with respect to Mr. Dunbar. The way it actually came out, we had a warrant for Mr. Dunbar and for him being at that apartment. That was all presented as the testimony and the argument in the end from the prosecution. So it was directed specifically at saying, well, we had a reason to be looking for Mr. Dunbar to be running a drug business at that location. And that's really the problem here is when you get this warrant being introduced and then the judge instructing the jury as the judge did, well, the fact that there's a warrant means a judge somewhere has determined there's probable cause for it. There's really no way to cross-examine that. Certainly you can't bring in the issuing judge on the warrant to say, Your Honor, why did you issue this? So there's a confrontation problem. But really the crux of the issue is ---- Officers are supposed to what? Not tell the truth? Well, I think if we had no Roviero issue, then I think it would all be open to coming into the trial. Assume we're beyond that. But once you ---- What are the officers, the agents supposed to redact their testimony? Well, I think it's a ---- You showed up at this apartment? I think it is an issue as to how to explain why the officers were there. I think that there are several proper ways that could have been done here. One would be simply to instruct the jury, because I don't think there was any dispute here. The officers were conducting a lawful surveillance of the premises at the time. And this is what they observed, and this is what led them to make the arrest and do the search. I mean, I think that would have been a very neutral way to set the context. I mean, I do agree that there is a need to set the context for why were they there, why were they looking at what happened at this apartment, why did they decide to stop Mr. Dunbar, why did they take him back to the apartment and search him as well as the apartment. I think they could have also, the judge could very well also have made a ruling that there was a search warrant for the apartment which the officers were in the process of serving when they observed this, so they would search all the occupants of the apartment. I think that would not taint this trial fundamentally. And I think that's the problem, is the trial was tainted by the suggestion that's being made, both in the evidence and in the argument and in the instruction, that there is more that we know about Mr. Dunbar that isn't in evidence here. And that's exactly what the jury came back and asked. I mean, with remarkable quickness, the jury came back with a question right during the evidence saying, well, why was this warrant issued? Did the police know ahead of time that they wanted to get Vernon Dunbar? That's a question that the jury asked. I mean, there's clearly a strong impact that was made from learning about this warrant. And I don't believe that that question was handled properly, because at that point, the judge clearly should have taken into the reins of saying the jury should not draw any conclusions. This is solely to explain why the officers were in the area. Instead, what we get is an instruction that essentially says to the jury, yes, your suspicions are correct. A judge somewhere has found that there is probable cause, because that's what the jury was instructed, that the fact that there's a warrant means a judge somewhere has found probable cause. But there's really no way for Mr. Dunbar to go into that subject, given the Roviero privilege assertion. And that's really what causes this problem to exist. I mean, if we don't have the Roviero issue, if we don't have the prior effort on the part of the defense to find out about the confidential informant and to bring to bear some cross-examination, because I'm certain Mr. Dunbar does not agree that there was probable cause. I'm certain Mr. Dunbar would like to have a chance to go through what the confidential informant had said and say this is not correct. You're not telling the truth. You have other crimes that you're trying to get bargaining consideration on. I mean, those are typical issues that we have with informants, none of which really are fully explained in the record here. You know, if you're correct, as I see it, this is going to probably require striking most search warrants that are used by police officers. I've never seen this argument used before. Have you? Well, I couldn't find any case that directly addresses the issue. And I note that the government doesn't seem to cite any cases either. If the Supreme Court vindicates you, you'll be a hero. We do have some cases out of the Fifth Circuit, which I've brought to the Court's attention, basically saying it's in this context of explaining why the officers were there, it is best not to put this cloud of criminality around the defendant. That's really what happened here. And there's a case called Vitale that's been cited. In that case, wasn't there at least an assertion by the police officers that there was an informant and that there was statements that the police reacted upon? Well, Vitale was a case where the detective testified, well, we went to the bar because we had reports that there was criminal activity happening there. And the Fifth Circuit said that's really an error. Now, in the context of Vitale, the Fifth Circuit held it was a harmless error for other reasons, but very clearly held that's an error. One should not say in this type of trial that there was something totally outside the record that caused the officers to be looking for specifically this defendant. There's another case called Gomez from the Fifth Circuit where the informant said the owner of the marijuana would be riding in a red Ford. And that's all that was ever said about the informant. And the Court, again, says that's an error because it's telling the jury there's an informant, there's other information out there that would tend to corroborate the arguments that are being made by the prosecution. And although here I would agree. If we had a situation where the actual warrant affidavit was in evidence, then I think we would be squarely within Crawford because clearly that would be what Crawford is calling testimonial statements that aren't necessarily sworn but are close enough to being like testimony that it presents a confrontation problem. You're down to about four minutes. Did you want to address any other issues or would you like to save some time for rebuttal? It's your argument. You can use it as you wish. Well, I'd just like to say that I think the other issue regarding the way that the priors were questioned about sort of adds to the problem here. I mean, the basic problem is how far is the government in this type of case going to be able to push the envelope where really the defense attorney is really not doing anything to make objections that seem to be called for. And I've pointed that out in the brief. I mean, one of the questions is kind of like it could be used on a law school exam. The prosecution asks, is it supposed to be impeachment regarding the defendant's prior experience with guns? The prosecution asks, do you remember telling Pauline Williams, I'll go to jail for murder because you'll be one dead bitch, as you threatened her with a black 9mm handgun? I mean, that's kind of blatant abuse, and that sort of pervaded the examination of Mr. Dunbar on cross. So I've made the argument on that, and I will reserve the rest of my time. Thank you. We'll hear from the government at this time. Good morning. Ms. Bunzel. May it please the Court. My name is Sharon Bunzel. I represent the United States on this appeal. I'd like to begin by highlighting a few points with respect to the informant issue. I think it's important to keep in mind that this is framed on appeal as a confrontation clause violation. That means that the analysis for this Court is very clearly on the testimony that was adduced at trial. And the issue is whether there were statements of an out-of-court declarant that were admitted against the defendant at trial. And I think perhaps for obvious reasons, as were pointed out by the Court, the appellant doesn't focus on the testimony, and that's because the testimony was, in fact, very limited. There were very limited references to the existence of a search warrant, no reference to probable cause, no reference even to the existence of a confidential informant, much less the informant's statements to law enforcement or that the informant had provided even information to law enforcement against the defendant. Counsel, I'll tell you what's bothering me, and that is the closing argument in particularly this statement by the government. There's a search warrant already linking the defendant to this area, to this particular apartment. And that, in some ways, is testimonial. It's coming from the government, but it's an inference that is — it's an inference that's there. I mean, it's possible that the jury might have figured that out on their own. Probably nobody can prevent that. But why is the government drawing that to the attention of the Court, and how did the Court clear — I'm sorry, how did the — why did the government draw that to the I agree, Your Honor, that that was perhaps an inference that was drawn to matters that were not in evidence, because, in fact, the testimony was not there. The testimony was merely that there was a search warrant. How about the Court's response to the jury's question? The Court's response to the jury's question, in addition to the prosecutor's argument, neither of those were objected to. Wouldn't the better response have been, you should conclude nothing but that the officers had a right to be there? Perhaps that might have been a better response, but the response that the district court gave was not plain error. It was an instruction that was explicitly approved by the defense counsel here, and it was merely an explanation of the law. It gave context, just as the testimony did, that there was a search warrant here. I know it's not this case, but what if the judge's response had been, you would be perfectly entitled to conclude that a duly sworn judge or magistrate looked carefully at evidence presented to him or her by these officers and concluded that they should go into that apartment and look for Dunbar? I think that would have been a problem, but it's clearly not what happened here. And, in fact, the Court instructed the jury repeatedly that their verdict needed to be based solely on the evidence and that they shouldn't consider anything that was not introduced as evidence. And the Court did that both when the Court first got the question from the jury. The Court instructed the jury, it's usually the lawyer's job to ask questions, and that's because you're only supposed to consider the evidence as it comes in through the presentation of the parties. And, again, at the end of the case, the Court instructed the jury, only consider the evidence. Don't consider what's been stricken. Don't consider anything outside the evidence. Reach your verdict based on the evidence. And to come back to the prosecutor's argument, again, like the district court's instruction, there was no objection, so this is reviewed for plain error in that respect. And, importantly, I don't think it causes a confrontation clause problem. What it may cause is some concern that there was a reference to evidence outside the record. But in any event, the isolated statement by the prosecutor, a reference to the search warrant linking the defendant to the apartment, it was listed as one of many factors that tied the defendant to the location. Just the context in which it was recited to the jury shows that there was, in fact,  And it was listed among those various other things, including Robin Abrams' testimony, the cooperating co-defendant who said Dunbar kept the safe there, the drugs and the money inside the safe were his. That was consistent with her statement upon her arrest. That was essentially the same thing. In addition, the prosecutor noted during closing and testimony at trial established that Dunbar was seen by surveillance agents at the apartment at the time that Abrams said he usually arrived there several times a week at about 10 p.m. Dunbar also was arrested when he was stopped by police outside the apartment with a key to the apartment. And, again, the prosecutor listed this as one of many things that tied him to the apartment. In addition, the prosecutor noted Dunbar's prints were on the baggies, one of the baggies containing the drugs inside the safe. And also a receipt inside the bedroom had Dunbar's name on it. In addition, the prosecutor noted in that closing in its laundry list of things in which the warrant was mentioned that the defendant gave a false exculpatory statement upon his arrest showing his consciousness of guilt. He said, I don't know anything about this apartment. I've never been here before. He admitted on the stand that he lied when he made that statement. And in addition, the prosecutor brought out in its closing, as the evidence showed during trial, that the defense theory was thoroughly impeached during the trial. The defendant had claimed that he had been at the apartment using drugs just before he was stopped by the police. But he showed no signs of being under the influence and had no drug paraphernalia on him. And his theory that his co-defendant, Abrams, and her boyfriend were the ones who possessed the drugs was also contradicted by testimony by Abrams and her boyfriend himself. So I think in the context of all of that evidence, we have a prosecutor making that reference. The jury was told by the judge that the lawyer's arguments were not evidence and the verdict should not be based on any arguments. And again, there was no objection. So the Court did not have an opportunity to ameliorate any error that that isolated reference caused. But importantly, that's reviewed for plain error. And the burden is on the defendant to show that that single reference in a trial full of substantial additional evidence against the defendant, that reference affected the outcome of the proceedings. And I think in light of the evidence of guilt, in addition to the presumption that the jury was following the Court's instruction to base its verdict only on the evidence, I think in light of those two things, the appellant cannot establish plain error here. In the police officer's affidavit to the Court, I don't know if it was sworn or not, but in presenting the information to the judge for a search warrant, was any statement within an affidavit or orally stated that a confidential informant or a reliable informant had furnished information? Was that submitted to the jury? No. Was that submitted to the Court? The affidavit in support of the search warrant did contain information that was given by a reliable informant, including that controlled buys were made by the informant from the appellant at the apartment. However, at trial, the affidavit was not submitted as evidence. It was never referenced. And the references to the search warrant, I would point the Court to the government's excerpts of record at pages 91 through 93. The references are very limited. At the government's excerpts of record, page 91, line 19, and it's not as described previously by the appellant, the officer was asked, did you prepare a search warrant for somebody who you see in court today? Answer, yes, I did. And who is that? Mr. Vernon Dunbar. And then on the following page, the warrant that you prepared, did it authorize a search in addition to the defendant, a search of apartment 4 at 10916 Apricot Street in the City of Oakland? Answer, yes, it did. And on the following page, and was this warrant signed by a judge? Yes, it was. That's it. No reference at all to the fact that the warrant was based on the statements of a confidential informant. No reference even that the warrant was for narcotics or that the warrant linked the defendant to the apartment. It was a warrant for the apartment. It was a warrant for the defendant. That's all we know. And that distinguishes this case very clearly from the Mayfield case upon which the appellant relies, as well as the line of Fifth Circuit cases that are cited in the reply brief. In all of those cases, the testifying officer repeats statements made by the confidential informant to law enforcement. I think on that point we have your argument well in hand. Did you want to address any of the other issues raised here today by opposing counsel? I'll touch very briefly on the cross-examination issue, unless the Court has specific questions. The appellant does not really dispute that the questioning regarding the 1992 incident, the assault with a deadly weapon, was proper in light of the direct examination on that very same subject. The direct brought out all of the details that were also covered by the government. So that's not really disputed. With respect to the 1996 incident, I think the Court needs to analyze this in two steps, I would submit to the Court. The very fact that the defendant, the appellant, possessed a gun in connection with the 1996 incident, the fact that the government was bringing out, you held a gun, it was a 9-millimeter gun, you possessed it in 1996, I think that was quite proper in light of the defendant's attestation that he had only a very limited involvement with guns. At one point he said he had only owned one gun before in his entire life, and that's at the government's excerpts of record at line at page 222, line 1. And later he said, I had only maybe two guns in my life, and that's at the government's excerpts of record at 231. So in light of those statements on cross-examination, the government was entirely entitled to show those statements are false. You, in fact, possessed guns on at least six different occasions. So the fact of the gun possession in 1996, I think, is very clearly impeachment by contradiction under Scott, which is cited in the government's brief, as well as U.S. v. Bosley, which is not cited in the government's brief. That also involved a cross-examination, a false statement brought out during cross-examination. The Court said the proper remedy, then, is to continue the cross-examination to show that the statement is false, and that's 615 F. 2nd, 1274. With respect to the single question by the prosecutor that the appellant brought up in his opening argument, the reference to the statements by Dunbar as he held that gun in 1996, the threat on the victim, the government concedes that that fell outside the proper scope of impeachment. The question was it objected to? It was, Your Honor, and it was objected to. The Court sustained the objection. The question was stricken from the record, and the jury was told at that moment to disregard it. The Court also later, in the instructions at the end of the case, instructed the jury not to consider any stricken testimony while considering its verdict, and not to consider questions or argument by counsel as evidence. It was never mentioned again, other than that single question, throughout the entire rest of the case, either during cross-examination or further cross-examination of the defendant. There was certainly no extrinsic evidence admitted of it, and it was never referenced during argument. And so in light of the other evidence at trial, which was substantial, I think that any error here with respect to that isolated question was clearly harmless. And for those reasons, as well as the reasons set forth in the government's brief, we would submit that the conviction should be upheld, unless the Court has any questions. I don't see any other. Thank you, counsel. Thank you, Your Honor. Rebuttal argument? All right. Thank you. I see how much time I have from the stopwatch. That's good. I want to first point out that in the record, as part of ER tab 21 of Helen's excerpts, is the search warrant affidavit that Judge Lay asked about. And if you take a look at that, you'll see that all of the information there, other than the officer's background, really comes from a confidential informant. So it's not like the jury didn't have the warrant. No, they didn't have the application. All they know is originally, and I think that the government's accurately quoted the initial questioning of the officer about the two warrants. But then the instruction that the jury hears from the judge after asking this question, the jury's question, I'll read that just to put this in context. The jury asks, why did the police know ahead of time that they wanted to get Vernon Dunbar? Had they watched him dealing somewhere besides just going in and out of Robin Abrams' house? That's their question that they asked within two hours of the testimony that was quoted. The response from the judge is, there's been discussions of search warrants and probation searches. I just wanted to tell you that a legally obtained search warrant is one that's signed by a judge after that judge has reviewed the warrant to make a legal conclusion that probable cause for the search warrant exists. I would submit that's not all that much different from the hypothetical. It didn't say anything about a confidential informant. It's a fairly technical definition of a search warrant. We might wish that the judge had handled it differently along the lines of some of the questions from my colleagues. But what's the fault in what the judge said? I don't particularly care for what was raised in closing argument by the government. But what's the problem with what the judge said? Well, I don't think it addressed the question in the proper way. In the context, it almost says the answer to the question is, yes, there is other information. Because it's saying, well, there's a search warrant because a judge has found that there's probable cause. I think it's not an incorrect statement. It's just the right statement but in answer to the wrong question. The question ‑‑ Is it going to come as a surprise to a jury that there's information that's not being presented in court that the government might have in its possession? Well, that's the exact problem. I think a jury is very likely to start thinking, gee, you know, there must be a lot of other information that we're not hearing. That's true. But that's not going to come as a surprise to a jury that not everything that the government might know about a case would be there. I think it's a very bad idea to encourage that kind of speculation by the jury. Encourage by the district court. Well, by not, as was suggested in earlier argument, by not more explicitly saying this is only to explain why the officers were at the scene. You should give it no other consideration. That would have been a better instruction. And there's really no need to talk about why search warrants issued. That really isn't relevant to anything the jury is properly considering. So although it's a correct statement, it's not in this context what should be said. And I think there's a need for this court to explain this because, as Judge Lake pointed out, there really isn't any precedent that would guide the court on how to approach this situation. I think we may need some. Did you object to the court and point out to the court that there should be a better answer? Well, I wasn't trial counsel, and trial counsel did not object. Not only didn't object, agreed to what was said to the jury. I think tacitly, I have to concede, didn't complain about this instruction. Okay. We're over your time. Thank both counsel for their arguments. The case just argued will be submitted for decision. And we'll move to the next case on the calendar, which is United States against Hayes. Counsel are present if they'd come forward, please. If you're ready, may I please? Let your counsel speak.
judges: Lay, Hawkins, Bybee